# EXHIBIT H

**Civil Action No. 1:23-cv-1466**



Joshua A. Romero
(512) 236-2035 (Direct Dial)
(512) 391-2189 (Direct Fax)
jromero@jw.com

August 8, 2023

**VIA CERTIFIED MAIL & EMAIL**

Ms. Rhonda Regan
Claims Professional, General Liability
Travelers
P.O. Box 650293
Dallas, Texas 75265-0293
rregan@travelers.com



RE:   **Demand for Defense and Indemnification of Claims in Cause No. 2022-27251;**
      ***Munoz, et al. v. Tesla, Inc., et al.;* In the 152nd Judicial District Court, Harris**
      **County, Texas (the "Lawsuit"); Travelers Claim No. FZG5826**

Dear Ms. Regan:

We are in receipt of Travelers' response to Tesla, Inc.'s tender of the defense of the Lawsuit and demand for indemnification from Belcan Services Group, Ltd. Partnership and Travelers. We respectfully request that you reconsider your denial of coverage in this case and accept the tender and indemnification in writing by **August 18, 2023**. If Travelers maintains its denial, we will be forced to initiate legal action against both Belcan and Travelers and seek coverage, indemnification, damages, statutory penalties and interest, and attorneys' fees. I hope this is unnecessary.

Travelers asserts the following three reasons for its denial of coverage and indemnification: (1) "the claims against Tesla are not within the scope of coverage provided by the additional insured endorsement under Belcan's policy"[1]; (2) "Tesla may be considered the Decedent's employer, which may implicate the Employer's Liability Exclusion under the policy"[2]; and (3) "Belcan also has no contractual obligation to indemnify and/or defend Tesla in this case as the injury is not alleged to have resulted from any act or omission of Belcan, its agents or subcontractors."[3]

As set forth below, each of these grounds for denial are baseless.

---

[1]   Travelers' Denial Letter of May 19, 2023, at 3 (the "Denial Letter").

[2]   *Id.*

[3]   *Id.* at 4.

36941218v.2 159479/00003

Ms. Rhonda Regan
August 8, 2023
Page 2

1.      **The claims against Tesla are within the scope of coverage provided by the additional insured endorsement under Belcan's policy.**

Travelers' Denial Letter acknowledges that Tesla is an additional insured under Travelers Policy Number TC2J-GLSA-134D2981-TIL-21 (the "Policy"),[4] but contends that the claims against Tesla in the Lawsuit are outside of the scope of coverage because "Tesla is being sued for its own negligent conduct not the acts or emissions of Belcan."  Denial Letter at 3.  This assertion is both factually incorrect and legally irrelevant.

The endorsement on which you rely—the Blanket Additional Insured endorsement—covers Tesla for any "injury or damage" that is "caused by acts or omissions" of Belcan or its subcontractor "in the performance" of Belcan's work.  Here, the Lawsuit is replete with allegations that Belcan and its employees' "acts and/or omissions, taken singularly or in combination, was a proximate cause of the incident made the basis of thus suit and the injuries and damages suffered by Plaintiffs and the Decedent's death."  Exhibit 1, ¶¶ 6.4, 6.6, 6.8, 6.10.  In fact, in addition to directly suing Belcan for Plaintiffs' injuries, Plaintiffs have sued Belcan's foreman, Gaspar Cano, Jr., for his conduct in the course and scope of his employment with Belcan that caused Plaintiffs' injuries.  *See id.* ¶¶ 3.8, 6.9 – 6.10.

The Fifth Circuit recently reiterated Texas law regarding an insurer's duty to defend:

> Under Texas's so-called 'eight-corner's rule, the insurer's duty to defend is determined by comparing the allegations in the plaintiff's [complaint] to the policy provisions, without regard to the truth or falsity of those allegations and without reference to facts otherwise known or ultimately proven.' *Monroe Guar. Ins. Co. v. BITCO Gen. Ins. Corp.*, 640 S.W.3d 195, 199 (Tex. 2022).  When applying the rule, 'we give the allegations in the [complaint] a liberal interpretation.' *Nat'l union Fire Ins. Co. of Pittsburg, Pa. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997).  'In case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, **such doubt will be resolve in insured's favor**.' *Id.* (quotations omitted).
>
> **Or as this court has previously summed it up: 'When in doubt, defend.'** *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 369 (5th Cir. 2008).

---

[4]      In our letter of July 5, 2022, we requested a copy of the Policy but have not been provided a copy to date.  Please promptly produce a complete copy of the Policy.

Ms. Rhonda Regan
August 8, 2023
Page 3

_____

*Windermere Oaks Water Supply Corp. v. Allied World Specialty Ins. Co.*, 67 F.4th 672, 675 (5th Cir. 2023) (emphasis added).  In other words, "an insurer is obligated to defend the insured if the facts alleged in the petition, taken as true, *potentially* assert a claim for coverage under the insurance policy."  *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 253 (5th Cir. 2011) (emphasis in original).

Here, there is no question that Texas law requires Travelers to defend Tesla as its insured. Indeed, it is indisputable that, according to Plaintiffs' allegations, the injuries about which Plaintiffs complain were caused by acts or omissions of Belcan in the performance of its work at the Gigafactory.  *See, e.g.*, Exhibit 1, ¶ 6.3 (Belcan "committed acts and omissions, which collectively and separately constituted negligence.  [Belcan] had a duty to exercise ordinary care, meaning the degree of care that would be used by an entity of ordinary prudence under the same or similar circumstances.  [Belcan] breached that duty in one or more of the following act . . . .").  This alone requires Travelers to defend Tesla in this Lawsuit.  *See Windermere*, 67 F.4th at 675.

Travelers relies on the following language in the endorsement to seek to escape its coverage responsibility:  "Such person or organization does not qualify as an additional insured with respect to the independent acts or omissions of such person or organization."  Denial Letter at 3.  Travelers' reliance on this endorsement is misplaced.  As an initial matter, the language directly preceding that section provides coverage for Tesla if an "injury or damage is caused by act or omissions" of Belcan—an allegation that is front and center in Plaintiffs' lawsuit.  *See, e.g.*, Exhibit 1, ¶ 6.  That allegation alone mandates coverage for Tesla under the Travelers Policy.  *See Monroe*, 640 S.W.3d at 199 ("[T]he insurer's duty to defend is determined by comparing the allegations in the plaintiff's [complaint] to the policy provisions, without regard to the truth or falsity of those allegations and without reference to facts otherwise known or ultimately proven.").

Second, even ignoring this fatal flaw in Travelers' position, the endorsement language on which Travelers relies does *not* extricate Travelers from its coverage obligations, because "[o]nce coverage has been found *for any portion of the suit*, an insurer must defend the entire suit."  *St. Paul Ins. Co. v. Texas Dep't of Transp.*, 999 S.W.2d 881, 884 (Tex. App.—Austin 1999, pet. denied) (emphasis added).  Here, there is unquestionably coverage based on Plaintiffs' allegations that Belcan caused the injuries at issue; thus, regardless of Plaintiffs' additional allegations that Tesla also allegedly caused or contributed to the injuries, Travelers must defend the entire suit.  *See id.*  Notably, in *St. Paul*, the carrier in made the same arguments that Travelers asserts here with respect to additional insured status, and the Austin Court of Appeals squarely rejected it and ordered the insurer to provide coverage to the additional insured based on the lawsuit's allegations.  *See id.* at 885-886 (rejecting carrier's argument that plaintiff was not additional insured where lawsuit could be read to allege that both insured and additional insured caused or contributed to plaintiff's injury).

In sum, not only does Travelers have a duty to defend Tesla in this lawsuit, it is also in violation of the Texas Prompt Payment of Claims Act, TEX. INS. CODE § 542.060, since it has breached its duty to defend Tesla, which "constitutes a per se violation" of the Act.  *See Windermere*, 67 F.4th at 675 (citing *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279

3

Ms. Rhonda Regan
August 8, 2023
Page 4

_____

S.W.3d 650, 652 (Tex. 2009)).  If Travelers fails to promptly honor is obligation to defend Tesla in this case, we will seek statutory penalties and interest in addition to coverage, damages, and attorneys' fees.

**2.     Tesla was not Decedent's employer and therefore the Policy's Employer's Liability Exclusion is not implicated.**

Travelers next makes the remarkable claim that coverage does not exist under the Policy because "Tesla *may* be considered the Decedent's employer, which *may* implicate the Employer's Liability Exclusion under the policy."  Denial Letter at 3 (emphasis added).  Travelers' position is meritless, at best.  As set forth in Decedent's *employment offer* from Belcan:

> Congratulations on joining the Belcan team!  We are pleased to offer you a contract position working at a Belcan Client site, **with Belcan as your legal employer of record**.
>
> ***
>
> This employment offer is for a Belcan contract assignment, contingent upon the successful completion of **Belcan employment-related documents** in addition to the results from per-employment reference checks and screenings.

Exhibit 2 (emphasis added).  In addition to signing his employment offer with Belcan, Decedent also executed a "Belcan Attendance and Zero Tolerance Policy" with his employer, Belcan, along with the Belcan "Employment Agreement" and Belcan "Emergency Contact Information/Employee Image Release" form.  *See id.*  And, of course, Belcan paid the Decedent as its employee and issued him W-2 statements.  Exhibit 3.  Further, Plaintiffs have admitted under oath in the Lawsuit that Decedent was employed by Belcan.  Travelers' position that Decedent "may" be considered Decedent's employee is nothing more than a bad-faith attempt to avoid fulfilling its legal obligation.  And, given the repeated reprimands issued against insurers by the Texas courts of appeal and the Fifth Circuit for this exact type of behavior, we are confident the trial court will see it the same way.

Travelers simply has no basis to deny coverage on the ground that Tesla "may be considered Decedent's employer."  The facts unequivocally prove that Belcan directly employed the Decedent.  Thus, Travelers has no legitimate basis to deny coverage based on the Employer's Liability Exclusion under the Policy.

4

Ms. Rhonda Regan
August 8, 2023
Page 5

_____

**3.      Belcan has a contractual obligation to indemnify and defend Tesla in this case since the injury is alleged to have resulted from an act or omission of Belcan, its agents, or subcontractors.**

Contrary to the allegations in the Lawsuit—which must be taken as true in assessing coverage—Travelers asserts that "Belcan also has no contractual obligation to indemnify and/or defend Tesla in this case as the injury is not alleged to have resulted from any act or omission of Belcan, its agents or subcontractors."  Denial Letter at 4.  This is plainly untrue.  As set forth above—and as pled throughout the Lawsuit—Belcan and its employee, Gaspar Cano, Jr., caused Plaintiffs' injuries.  *See, e.g.,* Exhibit 1, ¶¶ 6.3 – 7.7.

In addition to providing coverage under the Policy, Belcan has a contractual obligation to indemnify Tesla in this case under the Parties' Master Service Agreement:

> **11.      INDEMNIFICATION**
>
> **11.1      Indemnification by Supplier**.  Supplier will indemnify, defend and hold harmless Tesla, its Affiliates and their respective officers, directors, employees, agents and representatives (collectively, "***Tesla Indemnitees***"), from any and all losses arising from, in connection with, or based on allegation of any of the following: (a) any Claim by, on behalf of or relating to Supplier Personnel; (b) any Claim that, if true, would constitute a breach of Supplier's obligations under Section 6 (Confidentiality); (c) any Claim that, if true, would arise from or be attributable to a breach of Supplier's obligations under Section 2.7 (Compliance with Laws and Tesla Policies); (d) any Claim that, if true, would arise from or be attributable to a breach of Supplier's obligations under Section 9.2 (Non-Infringement); (e) any Claim for death or bodily injury, or the damage, loss or destruction of real or tangible personal property of third parties (including employees of Tesla and Supplier and their respective subcontractors) caused by the tortious conduct of Supplier, any Supplier Personnel, or any of Supplier's third-party suppliers; and (f) the inaccuracy or untruthfulness of any representation or warranty made by or on behalf of Supplier in the Agreement.

The allegations in the Lawsuit make clear that Tesla is entitled to indemnification pursuant to the Agreement.  First, the Lawsuit is unquestionably a Claim by, on behalf of, or relating to Belcan's employee and therefore the indemnification obligation applies.  Second, assuming the allegations in the Lawsuit are true (which the Agreement requires), Belcan would be in breach of its obligations under Section 2.7 of the Agreement.  Third, the allegations in the Lawsuit relate to a death and bodily injury allegedly caused by Belcan's tortious conduct.

****

Travelers' and Belcan's obligation to defend and indemnify Tesla in the Lawsuit cannot legitimately be disputed.  **Please confirm in writing by August 18, 2023, that Travelers and Belcan will defend and indemnify Tesla in this Lawsuit**.  Without that written confirmation, we will be forced to exercise our legal rights to obtain a declaration of your obligation to do so and to recover damages and penalties for the refusal to adhere to your legal and contractual obligations.

5

Ms. Rhonda Regan
August 8, 2023
Page 6

_____

Sincerely,

*/s/ Joshua A. Romero*
Joshua A. Romero

cc: Belcan Services Group, Ltd. Partnership
  Attn: Tara Hunt
  10200 Anderson Way
  Cincinnati, Ohio 45242
  (via certified mail, rrr)

  Paul D. Dorger
  Senior Vice President & General Counsel, Belcan
  (via email at pdorger@belcan.com)

**Certified Article Number**

9414 7266 9904 2208 9848 28

**SENDER'S RECORD**

6

36941218v.2 159479/00003

# EXHIBIT "1"

10/3/2022 5:10 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 68854524
By: Cynthia Clausell-McGowan
Filed: 10/3/2022 5:10 PM

CAUSE NO. 2022-27251

| | | |
|---|---|---|
| JASMIN MUNOZ, Individually and as | § | IN THE DISTRICT COURT |
| Personal Representative of the Estate of | § | |
| Antelmo Ramirez, Sr., Deceased, | § | |
| KARINA RAMIREZ, and ANTELMO | § | |
| RAMIREZ, JR. | § | |
| | § | |
| VS. | § | HARRIS COUNTY, TEXAS |
| | § | |
| TESLA, INC. ET AL. | § | 152ND JUDICIAL DISTRICT |

## PLAINTIFFS' SECOND AMENDED PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Plaintiffs Jasmin Munoz, Individually and as Personal Representative of the Estate of Antelmo Ramirez, Sr., Deceased ("Decedent"), Karina Ramirez, and Antelmo Ramirez, Jr. (collectively "Plaintiffs"), complaining of Defendants Tesla, Inc. ("Tesla"), Belcan, LLC ("Belcan"), Belcan Engineering Group, LLC ("Belcan Engineering"), Belcan Services Group Limited Partnership ("Belcan Services"), and Gaspar Cano, Jr. (collectively "Defendants"), and, for cause of action would show unto this Honorable Court, as follows:

### I. DISCOVERY CONTROL PLAN

1.1    Plaintiffs intend to conduct discovery under Level 3, pursuant to Texas Rule of Civil Procedure 190.4.

1.2    Plaintiffs affirmatively plead that this suit does not fall under the expedited-actions process of Texas Rule of Civil Procedure because Plaintiff is seeking monetary relief in excess of $250,000.

### II. CLAIMS FOR RELIEF

2.1    Pursuant to Tex. R. Civ. P. 47(c)(5), Plaintiffs are seeking monetary relief over $1,000,000.

### III.  PARTIES

3.1     Plaintiff Jasmin Munoz is a resident and citizen of Harris County, Texas, and brings this claim individually and as Personal Representative of the Estate of Antelmo Ramirez, Sr., Deceased.  Jasmin Munoz is the surviving daughter of the Deceased.

3.2     Plaintiff Karina Ramirez, is a resident and citizen of Texas.  Karina Ramirez is the surviving daughter of the Deceased.

3.3     Plaintiff Antelmo Ramirez, Jr. is a resident and citizen of Texas.  Antelmo Ramirez, Jr. is the surviving son of the Deceased.

3.4     Defendant Tesla, Inc., is a Delaware corporation with its principal place of business in Texas, doing business in the State of Texas for the purpose of accumulating monetary profit.  This Defendant has already appeared herein.

3.5     Defendant Belcan, LLC, is a foreign limited liability company with its principal place of business in Cincinnati, Ohio, doing business in the State of Texas for the purpose of accumulating monetary profit, but does not maintain a regular place of business nor a designated agent for service of process in the State of Texas. For these reasons, long-arm service of process is to be upon the Texas Secretary of State pursuant to Tex.Civ.Prac. & Rem. Code §17.044. This suit arises out of business contacts in the State of Texas and, under the circumstances, Belcan, LLC has appointed the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as its agent upon whom service of process may be had in this action. The Texas Secretary of State is requested to forward a copy of this Petition, along with Citation, by certified mail, return receipt requested, to Defendant, Belcan, LLC, at its home office 10200 Anderson Way, Cincinnati, Ohio 45242.  This  Defendant has already appeared herein.

3.6     Defendant Belcan Engineering Group, LLC, is a foreign limited liability company with its principal place of business in Cincinnati, Ohio, doing business in the State of Texas for the purpose of accumulating monetary profit, and may be served with process through its registered agent, C T Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201.

3.7     Defendant Belcan Services Group Limited Partnership, is a foreign limited partnership with its principal place of business in Cincinnati, Ohio, doing business in the State of Texas for the purpose of accumulating monetary profit.  This  Defendant has already appeared herein.

3.8     Defendant Gaspar Cano, Jr. was the supervisor of the crew that the Decedent was working on at the time of his death.  This Defendant may be served with process at 622 Ellena Road, Houston, Texas 77076 or wherever he may be found.

3.9     Plaintiffs specifically invoke the right to institute this suit against whatever entities were conducting business using an assumed or common name, if any, with regard to the events described in this Petition. Plaintiffs specifically invoke the right under Rule 28, Texas Rules of Civil Procedure, to have the true name of such parties substituted at a later time, if necessary.

## IV.  JURISDICTION AND VENUE

4.1     This Court has jurisdiction over this case because Defendants are residents of and/or systematically conduct business in the State of Texas.  The damages sought herein are in excess of the minimal jurisdictional limits of this Court.

4.2     Venue is proper in Harris County, Texas pursuant to Section 15.002(a)(3) of the Texas Civil Practice and Remedies Code as Harris County, Texas is the county where the principal places of business for at least one of the Defendants is located.  Venue is also proper in Harris

3

County, Texas pursuant to Section 15.002(a)(2) of the Texas Civil Practice and Remedies Code as Harris County, Texas is the county of Defendant Cano's residence at the time the cause of action accrued.  Because Plaintiffs have established proper venue against one defendant, the Court also has venue over all of the defendants in all claims or actions arising out of the same transaction, occurrence, or series of transactions or occurrences, thus venue is proper in Harris County, Texas as to all Defendants in this case.

4.3     Additionally, removal to federal court would be improper because this lawsuit does not involve a federal question, and this lawsuit lacks diversity of citizenship.

## V.  FACTS

5.1     It has become necessary to bring this action because of the deadly incident that occurred at the Tesla giga-factory construction project on September 28, 2021.

5.2     On the date of the incident, the Decedent was performing work on behalf of the Defendants at the project.  The Decedent performed heavy labor job tasks at the worksite, including constructing, installing and pounding stakes and boards for concrete framework.  During his work, he was exposed to the recognized hazard of high ambient heat with a heat index in excess of 98 degrees Fahrenheit in direct sun while performing his job duties.

5.3     As a result of the exposure to excessive heat, Decedent exhibited an altered mental status to his co-workers.  He was taken into a trailer on the site, where he became unresponsive. Medical staff began treatment until EMS arrived.  By the time EMS arrived, Decedent's temperature was 106.4 degrees.  Unfortunately, the medical treatment he received on the scene was unable to save him.  The Decedent died of hyperthermia as a result of the excessive heat conditions he worked in.

4

5.4     Decedent suffered unimaginable pain and suffering, before dying in the trailer.

5.5     Plaintiffs' injuries and the Decedent's injuries and resultant death were not caused by any fault of their own, but rather the negligence and/or gross negligence of all Defendants.

5.6     The consequence to Plaintiffs has been painful and will be prolonged, including physical injuries and mental suffering from which they may never recover.

## VI.  CAUSES OF ACTION

### A.     Negligence of Defendant - Tesla

6.1     At the time and on the occasion in question, the Defendant committed acts and omissions, which collectively and separately constituted negligence. The Defendant had a duty to exercise ordinary care, meaning the degree of care that would be used by an entity of ordinary prudence under the same or similar circumstances. The Defendant breached that duty in one or more of the following acts:

(a)     Failing to properly select, hire, train and manage Defendant's employees at the worksite;

(b)     Failing to properly select, hire, train and manage independent contractors;

©      Failing to implement proper and adequate safety methods and/or procedures;

(d)     Failing to take reasonable precautions for Decedent's safety;

(e)     Failing to provide Decedent with a reasonably safe place to work;

(f)     Failing to provide medical treatment and care to Decedent;

(g)     Failing to properly and adequately provide safety training, planning, and information to Defendant's employees in the event emergency medical care was needed;

(h)     Failing to inspect the work;

5

(I)    Failing to properly monitor the weather and temperature conditions at the worksite;

(j)    Failing to properly monitor and oversee safety in the workplace;

(k)    Failing to properly supervise the work being performed;

(l)    Failing to recognize and remediate hazards posed by significant temperatures at the worksite;

(m)    Failing to provide adequate warning to Decedent of the dangerous condition(s);

(n)    Failing to adequately and properly mitigate harm during work, including implementing adequate procedures regarding the temperature;

(o)    Failing to exercise due care and caution;

(p)    Violating OSHA regulations and standards; and

(q)    Other acts of negligence and/or omissions to be shown at trial herein.

6.2    Each of the above listed acts and/or omissions, taken singularly or in combination, was a proximate cause of the incident made the basis of this suit and the injuries and damages suffered by Plaintiffs and the Decedent's painful death.

**B.    Negligence of Defendant - Belcan**

6.3    At the time and on the occasion in question, the Defendant committed acts and omissions, which collectively and separately constituted negligence. The Defendant had a duty to exercise ordinary care, meaning the degree of care that would be used by an entity of ordinary prudence under the same or similar circumstances. The Defendant breached that duty in one or more of the following acts:

(a)    Failing to properly select, hire, train and manage Defendant's employees at the worksite;

(b)     Failing to implement proper and adequate safety methods and/or procedures;

©     Failing to take reasonable precautions for Decedent's safety;

(d)     Failing to provide Decedent with a reasonably safe place to work;

(e)     Failing to provide medical treatment and care to Decedent;

(f)     Failing to properly and adequately provide safety training, planning, and information to Defendant's employees in the event emergency medical care was needed;

(g)     Failing to properly monitor the weather and temperature conditions at the worksite;

(h)     Failing to properly monitor and oversee safety in the workplace;

(I)     Failing to properly supervise the work being performed;

(j)     Failing to recognize and remediate hazards posed by significant temperatures at the worksite;

(k)     Failing to provide adequate warning to Decedent of the dangerous condition(s);

(l)     Failing to adequately and properly mitigate harm during work, including implementing adequate procedures regarding the temperature;

(m)     Failing to exercise due care and caution;

(n)     Failing to implement safety policies and procedures applicable to subsidiary companies that were sufficient to minimize risk to Decedent and others;

(o)     Failing to implement policies and procedures applicable to subsidiary companies to monitor the work conditions;

(p)     Failing to implement policies and procedures applicable to subsidiary companies to recognize and remediate hazards posed by significant temperatures at the worksite;

(q)     Failing to implement policies and procedures applicable to subsidiary companies to properly monitor the weather and temperature conditions at the worksite;

7

(r)    Failing to implement policies and procedures applicable to subsidiary companies to ensure adequate medical care was available at the worksite;

(s)    Violating OSHA regulations and standards; and

(t)    Other acts of negligence and/or omissions to be shown at trial herein.

6.4    Each of the above listed acts and/or omissions, taken singularly or in combination, was a proximate cause of the incident made the basis of this suit and the injuries and damages suffered by Plaintiffs and the Decedent's painful death.

**C.    Negligence of Defendant - Belcan Engineering**

6.5    At the time and on the occasion in question, the Defendant committed acts and omissions, which collectively and separately constituted negligence. The Defendant had a duty to exercise ordinary care, meaning the degree of care that would be used by an entity of ordinary prudence under the same or similar circumstances. The Defendant breached that duty in one or more of the following acts:

(a)    Failing to properly select, hire, train and manage Defendant's employees at the worksite;

(b)    Failing to implement proper and adequate safety methods and/or procedures;

(c)    Failing to take reasonable precautions for Decedent's safety;

(d)    Failing to provide Decedent with a reasonably safe place to work;

(e)    Failing to provide medical treatment and care to Decedent;

(f)    Failing to properly and adequately provide safety training, planning, and information to Defendant's employees in the event emergency medical care was needed;

(g)    Failing to properly monitor the weather and temperature conditions at the worksite;

8

(h)     Failing to properly monitor and oversee safety in the workplace;

(I)     Failing to properly supervise the work being performed;

(j)     Failing to recognize and remediate hazards posed by significant temperatures at the worksite;

(k)     Failing to provide adequate warning to Decedent of the dangerous condition(s);

(l)     Failing to adequately and properly mitigate harm during work, including implementing adequate procedures regarding the temperature;

(m)     Failing to exercise due care and caution;

(n)     Failing to implement safety policies and procedures applicable to subsidiary companies that were sufficient to minimize risk to Decedent and others;

(o)     Failing to implement policies and procedures applicable to subsidiary companies to monitor the work conditions;

(p)     Failing to implement policies and procedures applicable to subsidiary companies to recognize and remediate hazards posed by significant temperatures at the worksite;

(q)     Failing to implement policies and procedures applicable to subsidiary companies to properly monitor the weather and temperature conditions at the worksite;

(®)     Failing to implement policies and procedures applicable to subsidiary companies to ensure adequate medical care was available at the worksite;

(s)     Violating OSHA regulations and standards; and

(t)     Other acts of negligence and/or omissions to be shown at trial herein.

6.6     Each of the above listed acts and/or omissions, taken singularly or in combination, was a proximate cause of the incident made the basis of this suit and the injuries and damages suffered by Plaintiffs and the Decedent's painful death.

9

### D.     Negligence of Defendant - Belcan Services

6.7     At the time and on the occasion in question, the Defendant committed acts and omissions, which collectively and separately constituted negligence. The Defendant had a duty to exercise ordinary care, meaning the degree of care that would be used by an entity of ordinary prudence under the same or similar circumstances. The Defendant breached that duty in one or more of the following acts:

(a)     Failing to properly select, hire, train and manage Defendant's employees at the worksite;

(b)     Failing to implement proper and adequate safety methods and/or procedures;

(c)     Failing to take reasonable precautions for Decedent's safety;

(d)     Failing to provide Decedent with a reasonably safe place to work;

(e)     Failing to provide medical treatment and care to Decedent;

(f)     Failing to properly and adequately provide safety training, planning, and information to Defendant's employees in the event emergency medical care was needed;

(g)     Failing to properly monitor the weather and temperature conditions at the worksite;

(h)     Failing to properly monitor and oversee safety in the workplace;

(i)     Failing to properly supervise the work being performed;

(j)     Failing to recognize and remediate hazards posed by significant temperatures at the worksite;

(k)     Failing to provide adequate warning to Decedent of the dangerous condition(s);

(l)     Failing to adequately and properly mitigate harm during work, including implementing adequate procedures regarding the temperature;

    (m)    Failing to exercise due care and caution;

    (n)    Violating OSHA regulations and standards; and

    (o)    other acts of negligence and/or omissions to be shown at trial herein.

6.8    Each of the above listed acts and/or omissions, taken singularly or in combination, was a proximate cause of the incident made the basis of this suit and the injuries and damages suffered by Plaintiffs and the Decedent's painful death.

**E.    Negligence of Defendant - Gaspar Cano Jr.**

6.9    At the time and on the occasion in question, the Defendant committed acts and omissions, which collectively and separately constituted negligence. The Defendant had a duty to exercise ordinary care. The Defendant breached that duty in one or more of the following acts:

    (a)    Failing to take reasonable precautions for Decedent's safety;

    (b)    Failing to provide Decedent with a reasonably safe place to work;

    ©    Failing to provide medical treatment and care to Decedent;

    (d)    Failing to properly and adequately provide safety training, planning, and information to Defendant's employees in the event emergency medical care was needed;

    (e)    Failing to properly monitor the weather and temperature conditions at the worksite;

    (f)    Failing to properly monitor and oversee safety in the workplace;

    (g)    Failing to properly supervise the work being performed;

    (h)    Failing to recognize and remediate hazards posed by significant temperatures at the worksite;

    (I)    Failing to provide adequate warning to Decedent of the dangerous condition(s);

11

     (j)     Failing to adequately and properly mitigate harm during work, including implementing adequate procedures regarding the temperature;

     (k)     Failing to exercise due care and caution; and

     (l)     other acts of negligence and/or omissions to be shown at trial herein.

6.10    Each of the above listed acts and/or omissions, taken singularly or in combination, was a proximate cause of the incident made the basis of this suit and the injuries and damages suffered by Plaintiffs and the Decedent's painful death.

**D.    Gross Negligence of All Defendants**

6.11    Plaintiffs allege that all acts, conduct, and/or omissions on the part of the Defendants, taken singularly or in combination, constitute gross negligence, were deliberate, and were the proximate cause of Plaintiffs' injuries and damages and Decedent's death. The Defendants' acts and/or omissions, when viewed objectively from their standpoint at the time such acts and/or omissions occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. The Defendants had actual, subjective awareness of the risk, but proceeded with conscious indifference to the rights, safety and welfare of Plaintiffs and Decedent. Such gross negligence was a proximate cause of the occurrence and Plaintiff's injuries and damages and Decedent's death.  Therefore, Plaintiffs are entitled to punitive and/or exemplary damages.

## VII.  DAMAGES (PECUNIARY AND NON-PECUNIARY)

7.1    As a result of Defendants' acts and/or omissions, Plaintiffs Jasmin Munoz, Karina Ramirez, and Antelmo Ramirez, Jr. have lost their father.  As a result, Plaintiffs have been made to suffer and sustain significant damages.  Antelmo Ramirez, Sr. suffered unspeakable fear, terror, and anguishn–then lost his life.  The amount of monetary relief sought is within the sole discretion of the

trier of fact, who will consider the evidence and decide what amount will compensate said Plaintiffs for Defendants' acts and/or omissions. Plaintiffs seek all damages allowed by law for wrongful death and the estate's survival actions.

7.2     Defendants proximately caused injury and death to Antelmo Ramirez, Sr., which resulted in the following damages, among others, to the Estate of Antelmo Ramirez, Sr.: (a) physical pain in the past; (b) mental anguish in the past; (c) disfigurement in the past; (d) physical impairment in the past; (e) medical expenses in the past; (f) loss of earnings and loss of future earning capacity; (g) burial expenses; and  (h) exemplary and punitive damages.

7.3     Defendants proximately caused injury and death to Antelmo Ramirez, Sr., which resulted in the following damages, among others, to Jasmin Munoz: (a) loss of companionship and guidance in the past and future; (b) mental anguish in the past and future; (c) loss of earning capacity in the past and future; (d) loss of consortium in the past and future; (e) loss of household services in the past and future; and (f) exemplary and punitive damages.

7.4     Defendants proximately caused injury and death to Antelmo Ramirez, Sr., which resulted in the following damages, among others, to Karina Ramirez: (a) loss of companionship and guidance in the past and future; (b) mental anguish in the past and future; (c) loss of earning capacity in the past and future; (d) loss of consortium in the past and future; (e) loss of household services in the past and future; and (f) exemplary and punitive damages.

7.5     Defendants proximately caused injury and death to Antelmo Ramirez, Sr., which resulted in the following damages, among others, to Antelmo Ramirez, Jr.: (a) loss of companionship and guidance in the past and future; (b) mental anguish in the past and future; (c) loss of earning

capacity in the past and future; (d) loss of consortium in the past and future; (e) loss of household services in the past and future; and (f) exemplary and punitive damages.

7.6     Plaintiffs seek all damages allowed by law.

7.7     Plaintiffs seek in excess of $25,000,000.00 and exemplary damages in the conscience of the trier of fact to deter such conscious indifference to human life and suffering and to deter corporations placing corporate profits and power over lives, specifically of this Decedent.

WHEREFORE, Plaintiffs pray the Court issue citation for Defendants to appear and answer herein, and that Plaintiffs be awarded judgment against Defendants for the following:

a.     Actual damages;
b.     Exemplary damages;
c.     Prejudgment and postjudgment interest;
d.     Court costs;
e.     Punitive damages and attorney's fees; and
f.     All other relief to which Plaintiff is entitled.

Respectfully submitted,

*/s/ Eric J. Rhine*
Marcus R. Spagnoletti
TX SBN 24076708
mspagnoletti@spaglaw.com
Eric J. Rhine
TX SBN 24060485
erhine@spaglaw.com
SPAGNOLETTI LAW FIRM
401 Louisiana Street, 8th Floor
Houston, Texas 77002
Telephone:     713.653.5600
Facsimile:     713.653.5656

ATTORNEYS FOR PLAINTIFF

14

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served upon all counsel of record via e-service on this 3rd day of October, 2022, in accordance with the Texas Rules of Civil Procedure.

*/s/ Eric J. Rhine*
Eric J. Rhine

15

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Meghan Martine on behalf of Eric Rhine
Bar No. 24060485
meghan@spaglaw.com
Envelope ID: 68854524
Status as of 10/4/2022 1:47 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Marcus RSpagnoletti | | marcus@spaglaw.com | 10/3/2022 5:10:25 PM | SENT |
| Joshua ARomero | | jromero@jw.com | 10/3/2022 5:10:25 PM | SENT |
| Tori Coates | | tcoates@jw.com | 10/3/2022 5:10:25 PM | SENT |
| Sean Gallagher | | sgallagher@jw.com | 10/3/2022 5:10:25 PM | SENT |
| Eric Rhine | | erhine@spaglaw.com | 10/3/2022 5:10:25 PM | SENT |
| Meghan Martine | | meghan@spaglaw.com | 10/3/2022 5:10:25 PM | SENT |
| Sarah Sanchez | | ssanchez@brothers-law.com | 10/3/2022 5:10:25 PM | SENT |
| David Brothers | | dbrothers@brothers-law.com | 10/3/2022 5:10:25 PM | SENT |

# EXHIBIT "2"



8/12/2021

Antelmo Ramirez,Antelmo Ra
52 Eagle Loop St
Falcon Heights     TX   78545

Dear Antelmo

Congratulations on joining the Belcan Team! We are pleased to offer you a contract position working at a Belcan Client site, with Belcan as your legal employer of record:

| | |
|---|---|
| Job Title: | Carpenter |
| Belcan Client: | Tesla Automotive (Austin. TX) |
| Straight time Rate: $ | 30.00 |
| Overtime Rate: $ | 45.00 |
| Per Diem: $ | 90.00 |
| Estimated Start Date: | 8/23/2021 |
| Report to: | Rick Hudgens |
| Work Location: | Austin                    TX        78717 |

This employment offer is for a Belcan contract assignment, contingent upon the successful completion of Belcan employment-related documents in addition to the results from pre-employment reference checks and screenings.

Please indicate below your acceptance of this offer. In order to ensure accurate and timely processing of your paycheck, we ask that you review the on-boarding documents that will be emailed to you shortly. These new hire forms must be completed and signed. Falsification of information will invalidate this offer.

Belcan must receive client approval of your weekly time by 5:00pm on Monday in order to process your weekly payroll during that week. Overtime is paid for any hours worked over 40 hours during the week and must be approved by your client manager. This assignment does not include holiday or vacation pay, is all inclusive and should be considered final in its terms and conditions.

If you have any questions about this employment offer or your Belcan assignment, please contact me at

We are pleased to have you join our team!

Sincerely,

**Annie Bamaw**

abamaw@belcan.com

Digitally signed by 'C=US, E
Date: 2021.08.24 14:19:36
Reason: SmartSign DocSig
Location: -98.963803-26.41

Acceptance: _____ *Antelmo ramirez*
 Antelmo Ramirez - 8/12/2021 4:18:35 PM UTC

Name: __Antelmo Ramirez,Antelmo Ramirez__

Date: __8/12/2021__

**Page 1 of 1**

**BSG 00173**



## Belcan Attendance and Zero Tolerance Policy- Tesla Giga Factory Texas

All employees must read, sign and date below in agreement with Belcan's Policy.  If policies are not followed **immediate action, up to termination may occur.**

There is zero tolerance for the following actions which will result in immediate removal from the work site:

1. Falsifying Timecards: 0 Tolerance
2. **Safety Violation: 0 Tolerance No retaliation will occur for reporting safety concerns**.
3. Operating a vehicle while using a cell phone: 0 Tolerance
4. Intentional Equipment Damage: 0 Tolerance
5. Taking keys from Equipment: 0 Tolerance

**Absenteeism Considerations:  All time away from work or late arrival to meetings or the job site should be reported to your Belcan manager.  Notification must occur as soon as you know you will not be able to report to work as scheduled.  Inexcusable absence and/or tardiness,  as noted below will result in disciplinary action up to termination**

- Absent for 2 consecutive days without notification to your manager
- 3 unexcused/excused absentees within 30 days
- 3 times -late or early clock-out within 30 days
- Late to 3 tool box meetings within 30 days

++ Non-Chargeable Absences include the following:

- Pre-Arranged Absence-vacation, bereavement, jury duty and holidays, approved leaves of absence (including those covered by the Family Medical Leave ACT and other applicable state laws)
- Documented Medical Absences, FMLA will apply where qualified
- Disciplinary Suspensions
- Absences resulting from verifiable industrial injury
- Subpoenaed court appearances

**Disciplinary Action may vary depending on the severity of violation.  Belcan's standard discipline path is below; however, failure to follow policy could lead to immediate separation:**

1. Verbal Warning
2. Written Warning
3. Suspension or Separation of employment

**Employee Signature:** _Antelmo ramirez_   **Date:** 8/26/2021
Antelmo Ramirez - 8/30/2021 4:52:37 PM UTC

Digitally signed by 'C=US, E
Date: 2021.08.30 09:52:37
Reason: SmartSign DocSig
Location: -98.963793-26.41



# EMPLOYEE AGREEMENT

This Agreement is made and entered into by and between Belcan, LLC, or one of its subsidiaries or affiliates ("Belcan") and the Employee. In consideration of employment with Belcan, Employee and Belcan agree as follows:

1. <u>Non-Disclosure of Confidential Information and Trade Secrets</u>.  During Employee's employment and the performance of Employee's duties for Belcan, Employee shall learn trade secrets and confidential information of Belcan and its customers, including but not limited to (a) financial information, (b) business methods and techniques, (c) the names, addresses, and other information pertaining to customers and/or prospective customers of Belcan; and (d) any information about its business that is not known to the public and gives Belcan an opportunity to obtain an advantage over competitors who do not know or use it ("Trade Secrets").  Employee acknowledges that Belcan has invested substantial sums in the development of its Trade Secrets.  During the term of Employee's employment, and after the termination of his/her employment for any reason (whether voluntary or involuntary), Employee covenants and agrees that he/she will not, directly or indirectly, disclose or communicate to any person or entity any Trade Secrets of Belcan. This covenant has no geographical or territorial restriction or limitation and applies no matter where Employee may be located in the future.

2. <u>Return of Company Property</u>. Upon leaving Belcan, Employee will immediately return all Belcan property including training manuals, laptop, phones, records, electronic data, sales materials, drawings, and any other Belcan assets. in my possession. Employee will not misuse or disclose any proprietary and/or confidential information known by Employee to persons who are not Belcan team members.

3. <u>New Developments</u>.  All ideas, inventions, discoveries, concepts, trademarks or other developments or improvements, whether patentable or copyrightable or not, conceived by Employee, alone or with others, at any time during the term of Employee's employment with Belcan, whether or not during working hours or on Belcan's premises, which are within the scope of or related to the business operations of Belcan or that relate to Belcan's work or project, present, past or contemplated ("New Developments"), shall be and remain the exclusive property of Belcan.  Employee shall do all things reasonably necessary to ensure ownership of such New Developments by Belcan, including the execution of documents assigning and transferring to Belcan, all of Employee's right, title and interest in and to such New Developments, and the execution of all documents required to enable Belcan to file and obtain patents, trademarks and copyrights in the United States and foreign countries on any of such New Developments.

4. <u>Covenants Regarding Non-Solicitation of Customers and Employees</u>: During Employee's employment and upon termination of his/her employment for any reason, and then for a period of one year after such termination, Employee covenants and agrees that:

   (a) Employee will not engage as an employee, consultant, subcontractor, manager, or owner of any business which competes, directly or indirectly, with Belcan, in any capacity that involves contact with or providing services to any customers, (defined as those entities involved in current contracts with Belcan), with which Employee interacted or to which Employee provided services during the final twelve months of his or her employment with Belcan.  It shall not be deemed a violation of this Agreement if Employee is employed by a competitor of Belcan i), even if that competitor is providing services to a customer of Belcan, provided that Employee shall not provide services, directly or indirectly, or communicate with such customer, or ii) for awarded recompete work under a government contract that was won by a competitor, provided Employee was not involved, directly or indirectly, in the work being awarded to a competitor. The restriction applies anywhere in the geographic territory where Employee worked for Belcan.

   (b) Employee shall not, directly or indirectly, (i) induce or attempt to induce or influence any employee of Belcan to terminate employment with Belcan; (ii) interfere with the relationship between Belcan and any employee of Belcan; or (iii) employ, or otherwise engage as an employee, independent contractor or consultant, any employee of Belcan or any person who was employed by Belcan within the prior 12 months, unless Employee obtains the prior written consent of Belcan.

5. <u>Reasonableness of Covenants</u>. Employee understands and agrees that the foregoing covenants are reasonable in all respects and are necessary to protect the valid interests of Belcan. Employee further understands and agrees that compliance with the terms set forth in this agreement is a condition of employment or continued employment with Belcan.

6. <u>Injunctive Relief</u>.  In addition, and not in lieu of any other remedies to which Belcan may be entitled, Employee agrees that a breach of any covenant set forth in this Agreement would result in irreparable injury, harm, and damage to Belcan for which it would have no adequate remedy at law, and Employee further agrees, in the event of any violation or

BSG 00180

breach of any provision of such paragraphs, Belcan shall be entitled to an immediate injunction and restraining order to prevent such violation or continuing violation, without having to prove damages, and any such violation may be enjoined through proper action filed in a court of competent jurisdiction. Employee further agrees to reimburse Belcan for all costs incurred in pursuing a successful action for breach of this Agreement, including Belcan's reasonable attorney's fees.

7. Export Control. Employee agrees to comply with all applicable regulations regarding international trade and export controls in accordance with applicable procedures, policies, and control plans. Employee understands that certain commodities, technical information, and software to which Employee may have access to during his or her employment are subject to U.S. Export Control regulations. Employee agrees not to disclose, export, transfer, or provide access to such controlled items without necessary authorization.

8. Arbitration. Any disagreement or claim arising out of the relationship between Belcan and Employee in regards to Employee's employment with Belcan will be dealt with through binding arbitration. The arbitration will include any and all claims involving the terms and conditions or employment with Belcan, including but not limited to contracts, personal injuries, tort claims, methods and terms of payment, discrimination laws, and/or any and all claim arising under federal, state and/or local law or the laws of the country in which Employee was employed with Belcan.

Any party desiring to pursue a disagreement or claim shall submit a demand for arbitration to the other party in writing within one (1) year after the alleged disagreement or claim arose. The arbitration will be conducted in accordance with the rules, regulations, and laws set forth by the Federal Arbitration Act. Belcan and Subcontractor will attempt to agree upon an arbitrator, and if they are unable to do so, they will follow the procedures of the American Arbitration Association. Employee's share of the arbitration filing fee will not exceed the amount it would cost Employee to file an equivalent action in court.

The Arbitrator will have sole authority to resolve any dispute relating to the interpretation, applicability, and enforceability of this Agreement and will have the authority to award either Party appropriate relief including but not limited to damages, costs, fees and attorneys' fees, as available under relevant laws. Any decision made during the arbitration procedure will be final and binding.

9. Class Action Waiver. Belcan and Employee agree that any and all claims will be handled on an individual basis exclusively through arbitration and that the right to petition a disagreement or claim as a class or collective action, either as a member or a representative, is waived by Belcan and by Employee.

10. Severability. If any provision of this Agreement is held to be illegal, invalid, or unenforceable in any respect, Belcan and Employee agree that such term or provision shall be deemed to be modified to the extent necessary to permit its enforcement to the maximum extent permitted by applicable law.

11. Assignment. This Agreement shall be binding upon and inure to the benefit of Belcan, its successors and assigns.

12. Employment "At Will": Employees understands that his/her employment is for no definite period. Employee also understands that as an employee, Employee can end the employment relationship at any time and for any reason or no reason; Belcan can do the same.

13. Governing Law. This Agreement shall be governed by the laws of the state in which Employee's services of employment are primarily to be rendered.

14. No Waiver. The failure of either party to insist on strict enforcement of any provision of this agreement at any particular time does not constitute a waiver of that provision.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date and year written below.

**EMPLOYEE:**

| Antelmo Ramirez | _Antelmo ramirez_ | 8/12/2021 |
| --- | --- | --- |
| | Antelmo Ramirez - 8/24/2021 9:14:14 PM UTC | |
| Printed Name | Signature | Date |

**BELCAN REPRESENTATIVE:**

_Shane Dayter_

P. Shane Dayter, Vice President of Human Resources

Belcan, LLC Proprietary Information
The information contained in this proprietary document is Belcan, LLC Proprietary Information and is disclosed in confidence

**BSG 00181**



# Emergency Contact Information / Employee Image Release

## ENTER YOUR PERSONAL INFORMATION HERE:

**Full Name:** Antelmo Ramirez

**Email:**

**Home Phone:**

**Cell Phone:**

**Home Address:** 52 Eagle Loop St

**City:** Falcon Heights   **State:** TX   **Zip:** 78545

**Highest Education Completed:** ○ GED   ● HS   ○ Associates   ○ Bachelor's   ○ Master's   ○ Doctorate

**Date of Birth:** 06/27/1964   **Marital Status:** ○ Single   ● Married   ○ Divorced   ○ Widowed

## IN CASE OF EMERGENCY, PLEASE CONTACT...   *(Please list at least one.)*

**First & Last Name:** Martha ramirez   **Relationship:** wife

**Cell #:**   **Home #:**

**First & Last Name:**   **Relationship:**

**Cell #:**   **Home #:**

**Please keep this information current with your local Belcan office and email to CorporateHR@Belcan.com.**

## IMAGE RELEASE

I understand that my employer, Belcan, LLC (hereinafter "Belcan", which definition shall include all affiliated companies), may wish, from time to time, to utilize my image on internal and external communication vehicles, which vehicles may include without limitation brochures, websites, company literature, intranet and social media vehicles such as Facebook, videos, marketing materials and other promotional material ("Communication Vehicles"). The placing or posting of my image on the Communication Vehicles shall be for Belcan business purposes, which purposes may include without limitation publicizing awards that I may have received, publicizing my role with Belcan and/or generally promoting Belcan.

I am agreeable to Belcan utilizing my image on Communication Vehicles for such business purposes. I realize and understand that my image could take the form of photographs, videos, drawings or other representations and that it could consist of me individually or as part of a group.

As such, I hereby grant to Belcan and its legal representatives, agents, contractors and assigns, the irrevocable and unrestricted right to utilize my image on Communication Vehicles for such business purposes. I hereby release Belcan and its legal representatives, agents, contractors and assigns from all claims and liability relating to the posting or placing of my image on Communication Vehicles.

This release shall be in effect until revoked in writing by me.   ● I Agree   ○ I Disagree

*Antelmo ramirez*
Antelmo Ramirez   3/24/2021 9:14:14 PM UTC

8/12/2021

**Name**   **Date**

Digitally signed by 'C=US, E
Date: 2021.08.24 14:14:15
Reason: SmartSign DocSig
Location: -98.963803-26.41

By typing my full name and date in the spaces above, I hereby am electronically signing this document and understand that this electronic signature is legally binding.

**BSG 00177**



# Voluntary Supplemental Data Sheet

Belcan considers applicants for all positions without regard to race, color, religion, sex, national origin, age, disability, veteran status or any other legally protected status.

To be completed by applicant. This information is voluntary and will in no way effect your employment. This is not part of your official application and is used for statistical purposes only.

**Please fill in the information required and check all items that apply to you.**
**Your cooperation is appreciated.**

| EEO INFORMATION | |
|---|---|
| Applicant's Name: **Antelmo Ramirez** | Date: **8/12/2021** |

Gender: ● Male ○ Female

| | |
|---|---|
| ● Hispanic or Latino | Persons of Mexican, Puerto Rican, Cuban, Central or South American, or other Spanish culture or origin regardless of race. |
| ○ Black or African American (Not Hispanic or Latino) | Persons having origins in any of the black racial groups of Africa |
| ○ White (Not Hispanic or Latino) | Persons having origins in any of the original peoples of Europe, North Africa, or Middle East. |
| ○ Native Hawaiian or Other Pacific Islander (Not Hispanic or Latino) | Persons having origins in any of the peoples of Hawaii, Guam, Samoa, or other Pacific Islands. |
| ○ American Indian or Alaskan Native (Not Hispanic or Latino) | Persons having origins in any of the original peoples of North and South America, (including Central America) and who maintain tribal affiliation or community recognition. |
| ○ Asian (Not Hispanic or Latino) | All persons having origins in any of the original people of the Far East, Southeast Asia, or India subcontinent, ex: Cambodia, China, India, Japan, Korea, Malaysia, Pakistan, the Philippine Islands, Thailand, and Vietnam. |
| ○ Two or More Races (Not Hispanic or Latino) | All persons who identify with more than one of the above races, excluding those who identify themselves as Hispanic or Latino. |
| ○ Other | ○ I choose not to disclose |

## VOLUNTARY SELF-IDENTIFICATION OF DISABILITY

You are considered to have a disability if you have a physical or mental impairment or medical condition that substantially limits a major life activity, or if you have a history or record of such an impairment or medical condition.

○ Yes, I have a disability (or previously had a disability)

● No, I do not have a disability

○ I do not wish to answer

## VOLUNTARY SELF-IDENTIFICATION OF VETERAN STATUS

As a Government contractor subject to VEVRAA, we are required to submit a report to the United States Department of Labor each year identifying the number of our employees belonging to each specified "protected veteran" category. If you believe you belong to any of the categories of protected veterans listed above, please indicate by checking the appropriate box below.

| | |
|---|---|
| ○ Disabled Veteran | ○ I am a Protected Veteran, but choose not to self-identify |
| ○ Recently Separated Veteran | ○ I am not a Protected Veteran |
| ○ Active Duty Wartime or Campaign Badge Veteran | ● I am not a Veteran |
| ○ Armed Forces Service Medal Veteran | ○ I decline to self-identify |

*For additional info or definitions, please contact CorporateHR@belcan.com*



# Payroll & Expense Reimbursements
# Direct Deposit Enrollment Form

Belcan encourages you to take advantage of our direct deposit program whereby your paycheck and expense reimbursements (i.e. travel expenses, tuition and professional certification reimbursements, etc.) are deposited into your designated account(s) each pay date. If a live check is required, it will be mailed via US Postal Service to your home address on file.

In addition to the information needed below, you will need to provide either:
A voided check (deposit slips do not contain the necessary information)
OR
Documentation from your bank, which needs to include:  your name, the Bank/Institution name, Routing #, and Account #

After officially joining Belcan, instructions and a website (through Ceridian) will be provided to securely view your paycheck stubs, along with W-2s, expense reimbursements, and 1095C.

**PLEASE COMPLETE ALL FIELDS. CALL YOUR BANK IF YOU HAVE ANY QUESTIONS.**

| **Primary Bank/Account** | ⦿Checking | | ◯Savings (contact your bank for routing #) | |
|---|---|---|---|---|
| Financial Institution: | | | | |
| Transit Routing Number (from your bank): | | | | |
| Deposit to Account No.: | | | | |
| **\*Optional Secondary Bank/Account** | ⦿Checking | | ◯Savings (contact your bank for routing #) | |
| Financial Institution: | | | | |
| Transit Routing Number (from your bank): | | | | |
| Deposit to Account No.: | | | | |
| *Amount to be Deposited: | $ | OR | | % |

*Employees who wish to have their direct deposit split between two banks or accounts must indicate either a fixed dollar amount or a desired percentage to be deposited into the secondary bank/account.  The net balance (net check less secondary amount) will automatically post to the primary account.

**PLEASE NOTE:**
- Until your direct deposit information is verified, you will receive a live check.
- When a pay week includes a Belcan recognized holiday(s) the pay cycle may be delayed.

## **\*\*Expense Reimbursements default to your "Primary Account" above\*\***

Contact Belcan Payroll with questions: directdeposithelp@belcan.com

I hereby authorize Belcan to deposit my Payroll into my account(s) as a credit and to initiate, if necessary, debit entries and adjustments for any credit entries in error to my account, at the financial institution(s) named above.  This authority is to remain in effect until Belcan has received written notification from me of its termination in such time and in such manner as to afford employer and financial institution a reasonable opportunity to act on it.

*Antelmo ramirez*
Antelmo Ramirez - 8/20/2021 9:14:14 PM UTC

**Name**

8/12/2021

**Date**

**Phone:** _____   **Last 4 digits of Social Security #:** _____

By typing my full name and date in the spaces above, I hereby am electronically signing this document and understand that this electronic signature is legally binding.

YOU MUST ATTACH A VOIDED CHECK AT THE END OF THIS PACKAGE

# EXHIBIT "3"

**FORM W-2 Wage and Tax Statement**

Copy C For EMPLOYEE'S RECORDS (See notice on back of copy 2)

Dept. of the Treasury - Internal Revenue Service

This information is being furnished to the Internal Revenue Service. If you are required to file a tax return, a negligence penalty or other sanction may be imposed on you if this income is taxable and you fail to report it.

These substitute W-2 Wages and Tax Statements are acceptable for filing with your Federal, State and Local Income Tax Returns.
If you worked in multiple locations, or had several forms of special compensation, you may receive more than one of these documents.

All copies of your W-2 are on this page, separated by perforations. The white copies are for your tax returns; the blue copy is for your records. General instructions for these forms, including an explanation of the letter codes used in box 12 are on the other side of the page.

### REISSUED STATEMENT

| D. CONTROL NUMBER 00292925 | This information is being furnished to the Internal Revenue Service | 2021 OMB NO. 1545-0008 | 1 WAGES, TIPS, OTHER COMPENSATION 3907.50 | 2 FEDERAL INCOME TAX WITHHELD 489.95 |
| B. EMPLOYER IDENTIFICATION NUMBER 31-1312685 | A. EMPLOYEE'S SOCIAL SECURITY NUMBER | | 3 SOCIAL SECURITY WAGES 3907.50 | 4 SOCIAL SECURITY TAX WITHHELD 242.27 |
| C. EMPLOYER'S NAME,ADDRESS AND ZIP CODE BELCAN SERVICES GROUP LTD PTRS 10151 CARVER RD BLUE ASH, OH 45242-4718 | | | 5 MEDICARE WAGES AND TIPS 3907.50 | 6 MEDICARE TAX WITHHELD 56.66 |
| | 13 Statutory Employee / Retirement Plan / Third-Party Sick Pay | | 7 SOCIAL SECURITY TIPS | 8 ALLOCATED TIPS |
| | | | 9 | 10 DEPENDANT CARE BENEFITS |
| E. EMPLOYEE'S FIRST NAME AND INITIAL   LAST NAME ANTELMO RAMIREZ 52 EAGLE LOOP ST. FALCON HEIGHTS, TX 78545 | SUFF. | | 11 NONQUALIFIED PLANS | 12 a-d |
| | | | 14 OTHER | |
| F. EMPLOYEE'S ADDRESS AND ZIPCODE | | | | |
| 15 STATE | EMPLOYER'S STATE I.D. NO. | 16 STATE WAGES, TIPS,ETC. | 17 STATE INCOME TAX | 18 LOCAL WAGES, TIPS, ETC. | 19 LOCAL INCOME TAX | 20 LOCALITY NAME |

FOLD AND TEAR ALONG PERFORATION

| D. CONTROL NUMBER 00292925 | This information is being furnished to the Internal Revenue Service | OMB NO. 1545-0008 | 1 WAGES, TIPS, OTHER COMPENSATION 3907.50 | 2 FEDERAL INCOME TAX WITHHELD 489.95 |
| B. EMPLOYER IDENTIFICATION NUMBER 31-1312685 | A. EMPLOYEE'S SOCIAL SECURITY NUMBER | | 3 SOCIAL SECURITY WAGES 3907.50 | 4 SOCIAL SECURITY TAX WITHHELD 242.27 |
| C. EMPLOYER'S NAME, ADDRESS AND ZIP CODE BELCAN SERVICES GROUP LTD PTRS 10151 CARVER RD BLUE ASH, OH 45242-4718 | | | 5 MEDICARE WAGES AND TIPS 3907.50 | 6 MEDICARE TAX WITHHELD 56.66 |
| | | | 7 SOCIAL SECURITY TIPS | 8 ALLOCATED TIPS |
| | REISSUED STATEMENT | | 9 | 10 DEPENDANT CARE BENEFITS |
| E. EMPLOYEE'S FIRST NAME AND INITIAL   LAST NAME ANTELMO RAMIREZ 52 EAGLE LOOP ST. FALCON HEIGHTS, TX 78545 | SUFF. | | 11 NONQUALIFIED PLANS | 12 a-d |
| | | | 14 OTHER | |
| | | | 13 Statutory Employee / Retirement Plan / Third-Party Sick pay | |
| F. EMPLOYEE'S ADDRESS AND ZIPCODE | | | | |
| 15 STATE | EMPLOYER'S STATE I.D. NO. | 16 STATE WAGES, TIPS,ETC. | 17 STATE INCOME TAX | 18 LOCAL WAGES, TIPS, ETC. | 19 LOCAL INCOME TAX | 20 LOCALITY NAME |

Copy 2 To be filed with Employee's STATE, CITY or LOCAL tax return     2021     Dept. of the Treasury - Internal Revenue Service

**FORM W-2 Wage and Tax Statement**

FOLD AND TEAR ALONG PERFORATION

| D. CONTROL NUMBER 00292925 | This information is being furnished to the Internal Revenue Service | OMB NO. 1545-0008 | 1 WAGES, TIPS, OTHER COMPENSATION 3907.50 | 2 FEDERAL INCOME TAX WITHHELD 489.95 |
| B. EMPLOYER IDENTIFICATION NUMBER 31-1312685 | A. EMPLOYEE'S SOCIAL SECURITY NUMBER | | 3 SOCIAL SECURITY WAGES 3907.50 | 4 SOCIAL SECURITY TAX WITHHELD 242.27 |
| C. EMPLOYER'S NAME, ADDRESS AND ZIP CODE BELCAN SERVICES GROUP LTD PTRS 10151 CARVER RD BLUE ASH, OH 45242-4718 | | | 5 MEDICARE WAGES AND TIPS 3907.50 | 6 MEDICARE TAX WITHHELD 56.66 |
| | | | 7 SOCIAL SECURITY TIPS | 8 ALLOCATED TIPS |
| | REISSUED STATEMENT | | 9 | 10 DEPENDANT CARE BENEFITS |
| E. EMPLOYEE'S FIRST NAME AND INITIAL   LAST NAME ANTELMO RAMIREZ 52 EAGLE LOOP ST. FALCON HEIGHTS, TX 78545 | SUFF. | | 11 NONQUALIFIED PLANS | 12 a-d |
| | | | 14 OTHER | |
| | | | 13 Statutory Employee / Retirement Plan / Third-Party Sick pay | |
| F. EMPLOYEE'S ADDRESS AND ZIPCODE | | | | |
| 15 STATE | EMPLOYER'S STATE I.D. NO. | 16 STATE WAGES, TIPS,ETC. | 17 STATE INCOME TAX | 18 LOCAL WAGES, TIPS, ETC. | 19 LOCAL INCOME TAX | 20 LOCALITY NAME |

Copy 2 To be filed with Employee's STATE, CITY or LOCAL tax return     2021     Dept. of the Treasury - Internal Revenue Service

**FORM W-2 Wage and Tax Statement**

FOLD AND TEAR ALONG PERFORATION

| D. CONTROL NUMBER 00292925 | This information is being furnished to the Internal Revenue Service | OMB NO. 1545-0008 | 1 WAGES, TIPS, OTHER COMPENSATION 3907.50 | 2 FEDERAL INCOME TAX WITHHELD 489.95 |
| B. EMPLOYER IDENTIFICATION NUMBER 31-1312685 | A. EMPLOYEE'S SOCIAL SECURITY NUMBER | | 3 SOCIAL SECURITY WAGES 3907.50 | 4 SOCIAL SECURITY TAX WITHHELD 242.27 |
| C. EMPLOYER'S NAME, ADDRESS AND ZIP CODE BELCAN SERVICES GROUP LTD PTRS 10151 CARVER RD BLUE ASH, OH 45242-4718 | | | 5 MEDICARE WAGES AND TIPS 3907.50 | 6 MEDICARE TAX WITHHELD 56.66 |
| | | | 7 SOCIAL SECURITY TIPS | 8 ALLOCATED TIPS |
| | REISSUED STATEMENT | | 9 | 10 DEPENDANT CARE BENEFITS |
| E. EMPLOYEE'S FIRST NAME AND INITIAL   LAST NAME ANTELMO RAMIREZ 52 EAGLE LOOP ST. FALCON HEIGHTS, TX 78545 | SUFF. | | 11 NONQUALIFIED PLANS | 12 a-d |
| | | | 14 OTHER | |
| | | | 3 Statutory Employee / Retirement Plan / Third-Party Sick pay | |
| F. EMPLOYEE'S ADDRESS AND ZIPCODE | | | | |
| 15 STATE | EMPLOYER'S STATE I.D. NO. | 16 STATE WAGES, TIPS,ETC. | 17 STATE INCOME TAX | 18 LOCAL WAGES, TIPS, ETC. | 19 LOCAL INCOME TAX | 20 LOCALITY NAME |

Copy B To be filed with Employee's FEDERAL tax return     2021     Dept. of the Treasury - Internal Revenue Service

**FORM W-2 Wage and Tax Statement**

FOLD AND TEAR ALONG PERFORATION

Visit www.irs.gov for e-file details.

## W-2 AND WAGE SUMMARY

© CERIDIAN

PRESORTED
1st CLASS
U.S POSTAGE
**PAID**
Ceridian
Corporation

**BELCAN SERVICES GROUP LTD PTRS**

**10151 CARVER RD**
**BLUE ASH, OH 45242-4718**

IMPORTANT TAX DOCUMENT ENCLOSED

ANTELMO RAMIREZ
52 EAGLE LOOP ST.
FALCON HEIGHTS, TX 78545

**004576**

BSG 00196

Return Receipt (Form 3811) Barcode

9590 9266 9904 2208 9848 21

1. Article Addressed to:

Belcan Services Group, Ltd. Partnership
Attn: Tara Hunt
10200 Anderson Way
Cincinnati,  OH  45242

2. Certified Mail (Form 3800) Article Number

9414 7266 9904 2208 9848 28

COMPLETE THIS SECTION ON DELIVERY

A. Signature

X _Heather Clevenger_    ☐ Agent    ☐ Addressee

B. Received by (Printed Name)    Heather Clevenger    C. Date of Delivery  8.14.23

D. Is delivery address different from item 1?    ☐ Yes
If YES, enter delivery address below:    ☐ No

3. Service Type:
☒ Certified Mail

Reference Information

Tesla ltr reTravelers denial of coverage

JAR6; 159479.00003; jar6

PS Form 3811, Facsimile, July 2015    Domestic Return Receipt